HARRISON K. McCANN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 111881. Promulgated September 17, 1943.

*William W. Nottingham, Esq.,* for the petitioner.
*Francis S. Gettle, Esq.,* for the respondent.

#### OPINION.

STERNHAGEN, *Judge:* The Commissioner determined a deficiency of $15,814.55 in gift tax for 1939, by increasing the valuation of 2,500 shares of class B stock of McCann-Erickson, Inc., from $89,887.50, as returned by the taxpayer, to $219,400, "after consideration of the provisions of the charter and bylaws of the corporation pertaining to class B preferred stock, net worth, earning power, dividend-paying capacity, and all other relevant facts and elements of value." The facts are all stipulated, in addition to which the respondent offered the opinion of one witness.

The primary ground upon which the taxpayer assails the Commissioner's determination of value is that the determination fails to treat the restriction upon the class B shares as a factor of valuation the recognition of which fixes the value at a book value figure of $36.5485 per share. Both parties agree that this figure of $36.5485 is the correct figure, if book value, as defined in the bylaw, is properly to be used in determining the value of the gift for tax purposes.

The taxpayer, a resident of New York, filed a 1939 gift tax return in the third district of New York. On November 27, 1939, he transferred to his wife by gift 2,500 shares of the class B stock of McCann-Erickson, Inc., an advertising agency. Both donor and donee were employed by the corporation. The class B shares were what petitioner calls incentive shares which were issued by the corporation only to employees. A bylaw restriction printed on the face of the certificate permitted only employees to hold such shares, required that upon termination of the employment they should be sold to the corporation, and required the corporation to purchase them at a price equal to the book value at the end of the following month. Since the donee was also an employee of the corporation, the taxpayer was, by special permission of the board of directors, permitted to transfer these 2,500 shares to her, and was not required to offer them, or sell

them to the corporation under the bylaw. The certificate of incorporation, article fourth, in terms prevented one employee-shareholder from assigning shares to another employee except by special permission of the board of directors. The ownership of such shares was in control of the corporation; and, whenever B shares in the hands of an employee became available by reason of the termination of the employment by death or otherwise, the corporation not only had a call giving it the right to purchase them at book value but was under a duty to do so.

The value of the B shares was controlled by a circumstance different from any that has heretofore been considered in the decided cases. The employee-shareholder had no market in which he could sell at his own price, for there were no available buyers, no matter how willing. No means existed for the shareholder to sell or otherwise dispose of his shares for more than the prescribed book value and the corporation was required to buy at no less. The price and the buyer were fixed and there is no room for speculation as to what price a hypothetical willing seller and willing buyer would agree upon if they were permitted to negotiate. There was but one market, comprised of one buyer, the corporation, and the bylaw fixed the price in that market at the prescribed book value and prevented the seller from asking or agreeing upon any more and required the buyer to pay that price. Unlike *Kline* v. *Commissioner*, 130 Fed. (2d) 742, the corporation's duty to buy was not a mere option in which the shareholder could sell at a greater price if the corporation should elect not to buy. Cf. *Helvering* v. *Salvage*, 297 U. S. 106; *Lomb* v. *Sugden*, 82 Fed. (2d) 166.

The customary method of evaluation of shares from a study of the corporation's history, statistics, economic position, and future prospects is not operative; and the value is fixed at the figure of book value upon which the shareholder and the corporation were required to deal. The valuation of $36.5485 per share is found as the value at the time of the gift. The Commissioner's determination is reversed.

*Decision will be entered under Rule 50.*