## COMMISSIONER OF INTERNAL REVENUE v. OXFORD PAPER CO.

Nos. 122–125.

Docket Nos. 22105–22108.

United States Court of Appeals Second Circuit.

Argued Dec. 12, 1951.

Decided Feb. 5, 1952.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Hilbert P. Zarky, Special Assts. to the Atty. Gen., for petitioner.

Willke, Owen, Farr, Gallagher & Walton, New York City (Thomas N. Tarleau, Charles A. Davey, New York City, of counsel), for respondents.

Before CHASE, CLARK and FRANK, Circuit Judges.

CHASE, Circuit Judge.

By an order of this court, made pursuant to a stipulation of the parties, three other petitions to review decisions of the Tax Court were consolidated for hearing with this petition and, the legal principles applicable to all being the same, decision as to them is to be entered in accordance with the decision here.

The question presented is whether the taxpayer, in computing its taxes in each of the taxable years involved, was entitled to an allowance for depreciation on a building and machinery, used in its business, which it had acquired in the following way:

In 1936 the Rumford Falls Paper Company, hereinafter called Power, a wholly owned subsidiary of the petitioner, was the lessor in a lease in perpetuity to the Continental Paper & Bag Corporation, to be called Continental, of the right to draw a given number of cubic feet of water per second from a canal connected with the Androscoggin River at Rumford, Maine. The average annual rental paid Power by Continental was $69,200. In December, 1936, Continental, being in a weak financial position, desired to rid itself of its obligations under the lease and did so by assigning the lease to the taxpayer who assumed the rent obligations of Continental under the lease. Power accepted the taxpayer as the lessee in place of Continental. As part of this transaction, despite the fact that the rental reserved in the lease was herein shown to be a low one, Continental also paid the taxpayer $100,000 in cash and transferred to it stock in another corporation worth $6,000 and the land, buildings, machinery and equipment comprising Continental's so-called Island Division Plant at Rumford, Me., which then had a fair market value, exclusive of the land, of $350,000.[1] The taxpayer included the cash and the value of part of the property received [2] in its gross taxable income for 1936 but actually paid no taxes thereon because its allowable deductions for that year exceeded its income. While it did not deduct depreciation on the buildings and machinery, hereinafter called the Plant, in computing its taxes for the years involved, it filed claims for refunds which put in issue the right to such deductions.

The majority of the Tax Court held, and the taxpayer here argues that, since the fair market value of the Plant was includible in its gross income for the year in which it was acquired, the same value is the base upon which depreciation deduc-

---

1. However difficult it may be to understand why Continental paid the taxpayer so much for relieving it of the obligation to pay *low* rent on the lease, the transaction was unquestionably one at arm's length on a business basis and precludes, therefore, any notion that this additional property was a gift.

2. Only $461,000 was included as income in the 1936 tax return. On the basis of the above figures, which were stipulated, nothing was included for the value of the land which was part of the Island-Division Plant property received by the taxpayer.

tions are to be computed. Salvage v. Commissioner, 2 Cir., 76 F.2d 112, affirmed sub nom. Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511. Were the premise of this argument sound, we would agree with the conclusion. However, as we view the transaction, the acquisition of the plant and other property did not result in income to the taxpayer in 1936.

It seems to this court that the correct analysis of the entire transaction is that the property the taxpayer received was acquired by way of purchase for which it paid the obligations it assumed under the lease less the $100,000 cash received. Oxford Paper Co. v. United States, D.C., 86 F. Supp. 366. Since cost, computed in accordance with 26 U.S.C.A. §§ 114, 113(a) and (b), with certain exceptions not here relevant, is the proper basis for depreciation deductions, the taxpayer must show what part of the assumed obligations, which were its cost, Consolidated Coke Co. v. Commissioner, 3 Cir., 70 F.2d 446, is allocable to the Plant. This it has not done on the present record and, since the assumed obligation consisted of what was shown to be a low rent, it may turn out that the Plant cost little, if anything. But, whatever amount is properly allocable to the Plant is the basis for depreciation, not the Plant's fair market value at the time of acquisition.

The taxpaper has urged that the property received was income in 1936 by analogy to Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168; where payments received by a lessor to obtain cancellation of a lease were held to be income. However, in view of the rationale of the Hort case that the payments received were mere substitutes for what would be plainly income, i. e. rent, 313 U.S. at page 31, 61 S. Ct. 757, while here the same cannot be said because the taxpayer was not the lessor, nor was the lease cancelled, we think the analogy untenable. Furthermore, the parent-subsidiary relationship between the taxpayer and Power does not, alone, permit the two to be considered the same taxpayer since Power, doing business as a separate corporation, is to be treated, for tax purposes, as a different entity. National Carbide Corp. v. Commissioner, 336 U.S. 422, 69 S. Ct. 726, 93 L.Ed. 779.

Reversed and remanded.